**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 1:12-cr-194-17 |
| v. : | |
| : | (Judge Kane) |
| **SHAINE L. WILLIAMS,** : | |
| Defendant : | |

**MEMORANDUM**

Before the Court is Defendant Shaine L. Williams' <u>pro se</u> motion (Doc. No. 1274) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons provided herein, the Court will deny the motion.

**I.    BACKGROUND**

On November 28, 2012, Defendant Shaine L. Williams ("Defendant") and multiple co-defendants were charged by superseding indictment with various drug, firearms, and money-laundering offenses. (Doc. No. 244.) Specifically, Defendant was charged with conspiracy to distribute and possess with intent to distribute at least 5 kilograms of cocaine hydrochloride and at least 280 grams of cocaine base, 21 U.S.C. § 846 (Count 1); distribution and possession with intent to distribute at least 5 kilograms of cocaine hydrochloride and at least 280 grams of cocaine base, 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2); and conspiracy to commit money laundering, 18 U.S.C. § 1956(h) (Count 4). (Doc. No. 244 at 1-3, 5-6.)

On December 10, 2012, Attorney John H. Reed ("Attorney Reed") was appointed under the Criminal Justice Act, 18 U.S.C. § 3006A, to represent Defendant. (Doc. No. 311.) Defendant pleaded not guilty to the charges, (Doc. No. 303), and eventually a four-day trial was

1

held in December 2014, (Doc. Nos. 974, 977, 980, 983.)[1]  Defendant was found guilty of

Counts 1 and 4, and on Count 2 was found guilty of cocaine hydrochloride distribution but

acquitted of cocaine base distribution.  (Doc. No. 990.)   After his trial, Defendant moved for a

judgment of acquittal or alternatively for a new trial, (Doc. Nos. 1034, 1035), and this motion

was denied, (Doc. Nos. 1106, 1109, 1110.)

Defendant's Presentence Investigation Report ("PSR") calculated his total offense level

to be 36, his criminal history category at II, and thus his advisory imprisonment range under the

2014 edition of the United States Sentencing Guidelines ("USSG" or "Guidelines") to be 210 to

262 months.  (Doc. No. 1154 at 12, 13, 15, 19 (PSR ¶¶ 28, 39, 49, 77)); see also USSG Ch. 5 Pt.

A (2014) (sentencing table).  Defendant's convictions also implicated a ten-year mandatory

minimum sentence.  (Id. at 19 (PSR ¶ 76).)

Defendant, through Attorney Reed, raised multiple objections to the PSR.  (See Doc. No.

1155 at 3-8).  Of relevance to the instant matter, Attorney Reed argued for a "mitigating role"

reduction under USSG § 3B1.2.  (Doc. No. 1155 at 1, 5.)  He also discussed the applicability of

the so-called "safety valve" provision, USSG § 5C1.2, to Defendant's circumstances.  (Doc. No.

1155 at 5-6.)

At sentencing on August 11, 2015, Attorney Reed further pursued the mitigating-role

objection, as well as an objection to drug-weight attributions in the PSR that exceeded the

minimum amounts found by the jury.  (Doc. No. 1184 at 2-6.)  The Honorable William W.

Caldwell overruled these objections.  (Id. at 4-5, 6-7.)  Attorney Reed additionally argued that in

light of recent Department of Justice guidance and potential forthcoming amendments to the

---

[1] Defendant was tried with one co-defendant, Adrian Totton.  (Doc. Nos. 974, 977, 980, 983.)

Guidelines, the safety-valve provision should apply to Defendant, (id. at 7-8), but Judge Caldwell overruled this objection as well, (id. at 9.)

Attorney Reed also presented the testimony of several witnesses at sentencing. (Id. at 10-19.) These witnesses included Defendant's aunt, his mother, and a volunteer "spiritual advisor" who worked for the Dauphin County Prison. (Id.) Defendant testified on his own behalf as well. (Id. at 19-22.)

After considering the witness testimony and the parties' final arguments, Judge Caldwell varied well below the Guidelines and sentenced Defendant to 144 months' imprisonment. (Id. at 26; Doc. No. 1168 at 3.) Defendant, through Attorney Reed, appealed his conviction, (see Doc. No. 1170), raising challenges to the sufficiency of the evidence, the failure to grant a continuance in light of the Government's late disclosure of evidence, and several trial-court evidentiary rulings, United States v. Williams, 669 F. App'x 81, 82-83 (3d Cir. 2016) (nonprecedential). On September 30, 2016, the Third Circuit affirmed Defendant's judgment. Id. It does not appear that Defendant filed a petition for a writ of certiorari with the Supreme Court of the United States.

In May and June of 2017, respectively, Defendant filed a "motion to compel attorney to surrender the case file," (Doc. No. 1255), and a related motion that specified the information sought from Attorney Reed, (Doc. No. 1258.) In the second, more detailed motion, Defendant requested an extensive amount of information and documents, as exemplified by the alphabetically enumerated list therein that spanned from "A" to "S." (Doc. No. 1258 at 2-3.) Attorney Reed filed a comprehensive, thirty-four-page response to Defendant's motion. (Doc. No. 1260.) That response painstakingly set forth a detailed history of Attorney Reed's document production to Defendant over the course of the multi-year representation, and addressed every

3

request—from "A" to "S"—contained in Defendant's second motion to compel. (Id.) Attorney Reed also included copies of correspondence showing the discovery provided by the Government, which Attorney Reed averred that he had subsequently forwarded to Defendant. (See Doc. No. 1260-1 at 2-4; Doc. No. 1260-3.) Judge Caldwell accordingly denied the motions to compel, and informed Defendant that if he desired additional copies of documents filed in his case, he must request such documents from the Clerk of Court. (Doc. No. 1272 at 2.) It does not appear that Defendant made any such requests.

In September 2017, Defendant timely filed the instant motion under 28 U.S.C. § 2255. (Doc. No. 1274.)[2] The motion has been fully briefed and is ripe for disposition.

## II. DISCUSSION

Defendant raises six grounds for relief in his Section 2255 motion, all sounding in ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution.

It is well-established that claims of ineffective assistance of counsel are governed by Strickland v. Washington, 466 U.S. 668 (1984). The burden is on the defendant to prove such a claim. Strickland, 466 U.S. at 687.

Strickland sets forth a two-prong test to assess ineffectiveness claims. First, counsel's performance must be deficient. Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Strickland, 466 U.S. at 687). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 688). However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

---
[2] On February 5, 2018, this case was reassigned to the undersigned due to Judge Caldwell's retirement.

professional assistance." Grant v. Lockett, 709 F.3d 224, 234 (3d Cir. 2013) (quoting Strickland, 466 U.S. at 689).

Second, counsel's deficient performance must have prejudiced the defendant. Jacobs, 395 F.3d at 105 (citing Strickland, 466 U.S. at 692). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Shotts, 724 F.3d at 375 (quoting Strickland, 466 U.S. at 694). A habeas court can forego an analysis of the Strickland performance prong if it finds that the defendant has failed to establish prejudice. Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 477 (3d Cir. 2017) (quoting United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008)).

As noted, Defendant asserts six claims of ineffective assistance of counsel regarding Attorney Reed's representation. The Court will address each claim in turn, except that claims two and three will be analyzed together as they implicate similar facts and issues.

A. GROUND 1: FAILURE TO DISCUSS SENTENCING EXPOSURE AND GUIDELINE RANGES

Defendant first broadly claims that Attorney Reed was constitutionally ineffective because he "failed to ensure that [Defendant] understood the applicable criminal trial process, federal sentencing guidelines, and sentencing exposure." (Doc. No. 1275 at 13.) Defendant alleges that Attorney Reed never discussed that Defendant's potential sentence would be calculated by using the Guidelines, nor explained the Guidelines to him in even "the most basic term[s]." (Id. at 13, 25-26.) According to Defendant, due to this ineffective assistance, his decision to reject the Government's proffered plea deal and go to trial was uninformed and would have been different had Attorney Reed properly advised him. (Id. at 13-16, 25-26.)

5

When considering a Section 2255 motion, the Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (internal quotation marks and citation omitted). Congress has provided that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Third Circuit has explained that "where a petition allege[s] any facts warranting relief under § 2255 that are not clearly resolved by the record, the District Court [is] obligated to follow the statutory mandate [of § 2255(b)] to hold an evidentiary hearing." Tolliver, 800 F.3d at 141 (first and second alterations in original) (internal quotation marks and citation omitted).

Ordinarily, allegations like those raised in Defendant's first ground for relief would require an evidentiary hearing. Here, however, the "files and records of the case" conclusively demonstrate that Defendant's assertions are patently frivolous. The instant record is replete with evidence that Attorney Reed, and others, thoroughly and repeatedly informed Defendant about his sentencing exposure, the Guideline ranges that would apply to his case under the proffered plea deals, and how those Guidelines could significantly increase if Defendant rejected the plea offer and were convicted at trial.

In Attorney Reed's comprehensive response to the 2017 motions to compel, he explained in detail the plea agreement negotiations that took place in this case. Attorney Reed averred that after receiving the first plea offer from the Government in July 2013, he provided a copy to Defendant in person and "reviewed, paragraph by paragraph," the plea proposal with him at the Dauphin County Prison. (Doc. No. 1260 at 6.) Defendant rejected that offer. (Id.)

6

The following year, in August 2014, Attorney Reed received a second plea proposal from the Government with more favorable terms. (Id.) Attorney Reed avers that he held phone conferences with Defendant in which the newest offer was thoroughly discussed, and a copy of the offer was sent to Defendant along with a cover letter that "contained verbatim the copy of two e-mails" from the Government summarizing the terms of the newly proposed plea deal. (Id.)

The August 2014 Government e-mail correspondence explained in pertinent part that, depending on Defendant's criminal history category, the Guideline sentencing range under the subject plea deal would "start at 57-71 months." (Doc. No. 1260-2 (Exhibit "B") at 2.) The correspondence further stated that if Defendant opted to go to trial and was convicted, "he will face at least a mandatory sentence of 10 years' imprisonment. Moreover, his [G]uidelines sentencing range is even higher: 121-151 months if [the Government] establishes more than five and less than 15 kilos of cocaine; 151-188 months if we establish more than 15 and less than 50 kilos of cocaine; 188-235 months if we establish more than 50 kilos and less than 150 kilos[,] etc." (Id.) This correspondence further advised that if Defendant were to go to trial instead of pleading guilty, he would "not get credit for acceptance of responsibility and the judge will have no discretion to go lower than the mandatory 10 [years]." (Id.) Defendant rejected this second plea offer as well. (Doc. No. 1260 at 6.)

Attorney Reed also included a copy of a December 2, 2014 letter that he sent to Defendant shortly before trial. (Doc. No. 1260-3 (Exhibit "C") at 2.) In that letter, Attorney Reed asked Defendant whether he wished "to reconsider" pleading guilty rather than going to trial, and again included a copy of the August 2014 correspondence from the Government that outlined the specific terms and sentencing ramifications of the second plea offer. (Id.) Attorney Reed also attached with that letter another e-mail from the Government dated December 1, 2014.

7

(Id.)  That e-mail explained that if Defendant were to plead guilty instead of going to trial, the Government would not oppose him remaining on release until sentencing, "which would be after Christmas."  (Doc. No. 1260-4 (Exhibit "D") at 2.)

Furthermore, Defendant participated in a pretrial hearing where the terms and sentencing effects of the second plea deal—versus going to trial—were again discussed in detail.  During that hearing, the Government fully outlined the Guideline ranges (i.e., sentencing exposure) implicated under the terms of the second plea deal, even providing different ranges depending on what criminal history category applied to Defendant's circumstances.  (Doc. No. 1180 at 6-7.)  The Government explained that it would agree to the two-level "mitigating role" reduction for playing a minor role in the offense, and that by pleading guilty Defendant could avoid the ten-year mandatory minimum that would be imposed if he were found guilty at trial.  (Id.)  Attorney Reed confirmed that the Government had provided an accurate representation of the situation, and Defendant indicated that he understood everything that had been discussed.  (Id. at 8.)  As the Government explained at that time, the primary purpose of this pretrial hearing was to "place on the record at the time before trial begins the plea agreement that had been previously offered" to Defendant, for Defendant to acknowledge that the plea agreement had been conveyed to him by his attorney, and that Defendant had "rejected that plea offer."  (Id. at 5.)

The record of this case conclusively demonstrates that Defendant was repeatedly informed—by Attorney Reed and others—about the Guidelines, his sentencing exposure, and how the Guidelines would impact his sentence under the proffered plea deal versus being convicted at trial.  Defendant's unsupported allegations to the contrary are "clearly frivolous" and thus do not require an evidentiary hearing.  Tolliver, 800 F.3d at 141.  Accordingly,

Defendant's first claim for Section 2255 relief will be denied, as he has failed to demonstrate the first prong—deficient performance—of the Strickland analysis.

B.   GROUNDS 2 & 3: FAILURE TO APPRISE OF EVIDENCE AND PURSUE PLEA DEAL

Defendant's second and third claims for relief overlap. In his second claim, he alleges that Attorney Reed was deficient for not "pursuing plea negotiations" and "plea offers," and that if Defendant would have been properly apprised of "the overwhelming evidence" against him he would have "cut his losses" and pleaded guilty rather than going to trial. (Doc. No. 1275 at 16-18.) In his third claim, he contends that Attorney Reed failed to make Defendant "aware of a substantial portion of the prosecution's evidence against him," and but for that failure Defendant probably would have pleaded guilty instead of going to trial. (Id. at 18.) Both claims essentially assert that Attorney Reed was constitutionally ineffective for failing to apprise Defendant of the evidence against him, and for failing to pursue and convey plea negotiations in light of that evidence. (Id. at 17-18, 26-27.) Once again, these assertions are belied by the record.

First, it is undisputed that in 2014 Defendant participated in a "reverse proffer" session with the Government. (Doc. No. 1184 at 24; Doc. No. 1260 at 4; Doc. No. 1260-2 at 2; Doc. No. 1296 at 3.) Defendant himself admits that during this meeting "the government told [him] of the evidence against him and the likely outcome of the case." (Doc. No. 1296 at 3.) As Attorney Reed described the reverse proffer, Defendant, the Government, Attorney Reed, and DEA agents discussed "the parameters of the Government's case," and the Assistant United States Attorney "personally relayed the terms of the Government's plea proposal" to Defendant. (Doc. No. 1260 at 4.)

Second, the record shows that Attorney Reed meticulously forwarded the Government's voluminous discovery to Defendant throughout the course of the case. Attorney Reed avers that

9

Defendant was provided with initial discovery that "consisted of approximately 1,000 pages of documents and eight (8) CD-ROMs containing more documents, photographs, and hundreds of hours of intercepted telephone conversations[.]" (Doc. No. 1260 at 4.) Attorney Reed further avers that "[s]ubsequent discovery materials were shared with [Defendant] on an ongoing basis. (Id. at 5.) Moreover, according to Attorney Reed, all "Jencks/Giglio materials" were reviewed with Defendant two days prior to the commencement of trial. (Id. at 11.) Finally, in response to post-trial correspondence from Defendant, Attorney Reed gave Defendant copies of documents and CD-ROMs of the discovery material that had been provided by the Government and discussed with Defendant shortly before trial. (Id. at 3.) Notably, Defendant has not challenged Attorney Reed's representations regarding the extensive production of information to Defendant over the course of his case.

Third, Defendant's allegations that plea negotiations and offers were not pursued or properly conveyed are directly contradicted by the substantial evidence outlined in Section II. A. above. Not only does the record indicate that Attorney Reed was actively pursuing plea negotiations on Defendant's behalf, but there is conclusive evidence that the details and sentencing implications of these plea deals were conveyed and explained to Defendant on multiple occasions, and that Defendant knowingly rejected the offers. See Section II. A., supra. Plaintiff's allegations to the contrary are patently frivolous. Thus, the record conclusively shows that Defendant was provided with sufficient information "to make a reasonably informed decision whether to accept [the] plea offer." United States v. Bui, 795 F.3d 363, 367 (3d Cir. 2015) (quoting Shotts, 724 F.3d at 376).

Thus, no evidentiary hearing is required for Defendant's second and third claims. The files and records of this case irrefutably demonstrate that Defendant is not entitled to relief, as he

has failed to establish deficient performance—the first prong of the Strickland analysis—for these claims. As such, Defendant's second and third claims for Section 2255 relief will be denied.

> C. GROUND 4: FAILURE TO KNOW ABOUT AND INFORM OF GUIDELINE AMENDMENTS

Defendant next claims that Attorney Reed's performance was deficient because he allegedly failed to learn of or inform Defendant about several amendments to the Guidelines. Specifically, Defendant alleges that Attorney Reed failed to know of, and inform Defendant about, Amendment 782 and Amendment 794.

> > **1. Amendment 782**

In 2014, the United States Sentencing Commission passed Amendment 782, which became effective November 1, 2014, and reduced the Guidelines' base offense levels for many drug offenses by two levels. See USSG app. C, amend. 782 (Supp. Nov. 1, 2014). The Sentencing Commission also made Amendment 782 retroactive. USSG app. C, amend. 788 (Supp. Nov. 1, 2014); USSG § 1.B1.10(d) (2014).

Defendant's argument regarding Amendment 782 is difficult to follow. (See Doc. No. 1275 at 19-20.) Liberally construed, he appears to contend that Attorney Reed was ineffective for failing to inform him about the two-level reduction under Amendment 782, which would have further influenced him to plead guilty rather than go to trial.

Here, even assuming that Attorney Reed did not know of and inform Defendant about Amendment 782, and that this omission somehow constituted ineffective assistance, Defendant has failed to demonstrate how this allegedly deficient performance prejudiced him. As the Government notes, in all of the Guideline calculations presented to Defendant, it appears that

11

Amendment 782's two-level reduction was applied, even when Guideline ranges were discussed before the effective date of the amendment.

Under the terms of the second plea offer, Defendant would plead guilty to conspiracy to distribute and possess with intent to distribute cocaine hydrochloride (Count 1), the drug weight would be between 5 and 15 kilograms, a two-level reduction for a minor role would be applied, and a three-level reduction for acceptance of responsibility would also be applied. (See Doc. No. 1260-2 at 2; Doc. No. 1180 at 6-7.) Without applying Amendment 782, the total offense level for that particular crime under those circumstances would be 27. See USSG § 2D1.1(c)(4) (2013) (base offense level of 32 minus 5 levels of reductions equals a total offense level of 27). Assuming a category I criminal history, as the Government often did in its representations, the Guideline range for a total offense level of 27 (i.e., without Amendment 782's two-level reduction) would be 70 to 87 months, rather than 57 to 71 months. See USSG Ch. 5 Pt. A (2013) (sentencing table); USSG Ch. 5 Pt. A (2014) (sentencing table) (same). Thus, the Guideline sentencing range represented by the Government in both its August 2014 correspondence and shortly before trial—57 to 71 months—necessarily must have applied Amendment 782 in its calculations.

None of the Guideline range representations appearing in the record that were proffered to Defendant were improperly inflated due to a failure to employ Amendment 782. Defendant therefore cannot demonstrate prejudice for his claim regarding Attorney Reed's alleged failure to know of or inform him about Amendment 782. Because Defendant was given accurate Guideline sentencing exposure information (including application of Amendment 782) for both the terms of second plea offer and a possible conviction at trial, he cannot show that there is a reasonable probability that but for Attorney Reed's allegedly deficient performance the result

12

would have been different—i.e., he would have accepted the second plea offer rather than going to trial.[3]

### 2. Amendment 794

Section 3B1.2 of the Guidelines involves reducing a defendant's offense level if he played a "mitigating role" in the offense. USSG § 3B1.2. The reduction can be two, three, or four levels depending on how limited the defendant's participation was in the offense. Id.

Amendment 794 to the Guidelines, which became effective on November 1, 2015, revised the "Application Notes" of Section 3B1.2. See USSG app. C, amend. 794 (Supp. Nov. 1, 2015). Relevant to the instant case, the amendment clarified Note 3(C) by providing five factors that the court should consider when making its mitigating-role determination. Id. It also added the following guidance after the new Note 3(C) factors: "The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." Id. Amendment 794 was not made retroactive by the Sentencing Commission. See USSG § 1B1.10(d) (2015).

Defendant contends Attorney Reed was ineffective for failing to "keep abreast of the legal changes within the sentencing [G]uidelines," and for failing "to preserve and/or object at sentencing with regards to [A]mendment 794." (Doc. No. 1275 at 19; Doc No. 1296 at 4.) He also appears to allege that Attorney Reed was ineffective for not raising Amendment 794 on direct appeal. (Doc. No. 1274 at 8.) Defendant's argument fails because Attorney Reed's

---

[3] As the Government further notes, (see Doc. No. 1290 at 12), Defendant also obtained the benefit of Amendment 782 at his sentencing, so there is no basis for prejudice regarding the actual sentence he received. Compare USSG § 2D1.1(c)(2) (2013) with USSG § 2D1.1(c)(3) (2014). (See also Doc. No. 1154 at 12-13 (PSR ¶¶ 28, 31).)

alleged shortcoming does not rise to the level of ineffective assistance, and even if it did, Defendant cannot show the requisite prejudice.

Amendment 794 was not in effect when Defendant was sentenced on August 11, 2015, nor was the amendment given retroactive applicability when it was made effective. Attorney Reed argued in his written objections and during sentencing that Defendant should receive a reduction under Section 3B1.2 for his minor role in the instant offense. (See Doc. No. 1155 at 5; Doc. No. 1184 at 5-6.) Ultimately,0 Judge Caldwell overruled that objection. (Doc. No. 1184 at 6-7.) Attorney Reed did not challenge Defendant's sentence on appeal.

It is true that *best* practice in this situation would have been for Attorney Reed to include in his argument at sentencing and on appeal the amendment to the commentary of Section 3B1.2. However, the Strickland standard does not require flawless representation. See Harrington v. Richter, 562 U.S. 86, 110 (2011) (citing Strickland, 466 U.S. at 687). It merely requires "reasonably competent" performance that does not fall below the "range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687 (citation omitted). Moreover, as the Supreme Court of the United States has explained, although a single serious error can rise to the level of constitutional ineffectiveness, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." Richter, 562 U.S. at 110.

Whether failing to know or advise a client about a relevant amendment to the Guidelines qualifies as deficient representation depends on the facts of the case. See, e.g., United States v. Cieslowski, 410 F.3d 353, 359-60 (7th Cir. 2005). Under the facts here, and when viewing Attorney Reed's overall performance during the sentencing phase and on appeal, the Court cannot say that Attorney Reed's failure to invoke a proposed amendment to the commentary of

14

the Guidelines qualifies as falling below an objectively reasonable range of competence, especially when Attorney Reed argued for the relevant reduction at sentencing (albeit without invoking the proposed amendment to the commentary).

However, even if Attorney Reed's alleged failure to raise Amendment 794 at sentencing and on appeal amounted to constitutionally deficient performance, Defendant is unable to demonstrate prejudice for at least two reasons.

First, Defendant has not demonstrated that there is a reasonable probability that if such an argument were raised at sentencing, the trial court would have sustained the "mitigating role" objection and applied a two-level decrease to his Guideline range. Defendant has never shown, at sentencing or in the instant Section 2255 motion, why he was "substantially less culpable than the *average participant* in the criminal activity." USSG § 3B1.2 cmt. n.3(A) (emphasis added). At sentencing, Attorney Reed argued that Defendant was simply a currier or "mule" for the drug distribution network, and thus "his role [was] obviously less than that of the other major participants in this case." (Doc. No. 1184 at 5-6.) But no comparison was ever made to any other specific participant in this criminal enterprise to establish that Defendant's role was substantially less culpable on average. Defendant, in his pro se Section 2255 motion, also fails to provide any specific comparisons to the other criminal-enterprise participants.

This case had a total of twenty-one named defendants, and the involvement of those defendants in the criminal enterprise appears to have varied widely. (See Doc. No. 1154 at 3-5, 8-12 (PSR pp. 2-4, 7-11); Doc. No. 244 (superseding indictment).) Defendant was charged and convicted on three of the four substantive counts appearing in the superseding indictment. While it is evident that some of the other participants, for example John Rawls, played a more significant role in the scheme than Defendant, Defendant has failed to establish that his drug-

15

currier activity was substantially less culpable than the *average* participant. See United States v. Isaza-Zapata, 148 F.3d 236, 240 (3d Cir. 1998) ("The defendant bears the burden of demonstrating that . . . under the facts of his particular case, the minor role adjustment should apply.").

Second, Defendant fails to establish prejudice because the sentence he received was drastically lower than the Guidelines' advisory sentencing range, and Judge Caldwell considered Defendant's level of involvement in the offense when fashioning the sentence. Defendant's Guideline range was 210 to 262 months' imprisonment, and he was sentenced to 144 months—only 24 months above the mandatory minimum. Even if the mitigating-role two-level decrease had been applied to give Defendant a total offense level of 34 rather than 36, his Guideline range still would have been 168 to 210 months, which is approximately two to five years longer than the sentence he actually received. See USSG Ch. 5 Pt. A (2014) (sentencing table).

Furthermore, while Judge Caldwell denied the specific application of the mitigating role reduction, he explicitly considered Defendant's role in the criminal enterprise when fashioning Defendant's sentence. Judge Caldwell first noted that he would consider the lesser role Defendant played when determining if a variance should be granted. (Doc. No. 1184 at 7.) Then, when granting Defendant a significant variance below the Guideline range, Judge Caldwell discussed Defendant's limited role in the criminal enterprise. (Id. at 25-26.) Because Judge Caldwell explicitly considered Defendant's particular role and varied well below the Guideline range (even the range that would have resulted had the minor-role decrease been granted), Defendant has failed to establish prejudice from the alleged ineffectiveness of Attorney Reed regarding Amendment 794.

D. GROUND 5: FAILURE TO ADEQUATELY REPRESENT DEFENDANT AT SENTENCING

Defendant next asserts that Attorney Reed was ineffective during sentencing by failing to "present[] evidence and arguments in support of objections and/or grounds for mitigation of sentence." (Doc. No. 1274 at 15.) This claim was neither mentioned nor developed in Defendant's briefing. Thus, the Court can only assume that Defendant is referring to the other arguments he has raised regarding the sentencing reductions he believes he should have received. Because those arguments have already been fully addressed, the Court finds no need to revisit them here.

Inasmuch as Defendant makes a general ineffectiveness claim regarding Attorney Reed's overall performance at sentencing, the Court flatly rejects such a claim. As explained above, Attorney Reed lodged multiple objections to the PSR, capably argued for those objections during sentencing, and put on multiple witnesses in support of Defendant. Due to Attorney Reed's able and competent representation, Defendant received a sentence that was well below the Guidelines for his case. Simply put, there is no basis on which to find that Attorney Reed's general conduct at sentencing fell below the constitutional minimum. Defendant's undeveloped claim therefore fails to establish the first Strickland prong, to say nothing of the second, and consequently will be denied.

E. GROUND 6: CUMULATIVE ERROR

Defendant's final Section 2255 claim alleges that the prejudice resulting from Attorney Reed's errors, when cumulated, requires resentencing or an evidentiary hearing. The Court disagrees.

"The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of

his constitutional right to due process." Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d 528, 542 (3d Cir. 2014) (explaining cumulative error in context of habeas petition under 28 U.S.C. § 2254). Such claims have also been recognized in Section 2255 proceedings. See, e.g., United States v. Fields, 761 F.3d 443, 483 (5th Cir. 2014); United States v. Olsen, 704 F.3d 1172, 1196-97 (9th Cir. 2013).

The foregoing analysis regarding Defendant's other Section 2255 claims reveals that in only one of those claims was deficient performance—i.e., attorney "error"— potentially at issue, and even then such error was merely assumed for the sake of argument. See Section II. C., supra. Both case law and logic dictate that if there is only one attorney error, which itself was found to have no prejudicial effect, there cannot possibly be an aggregation of errors to establish a cumulative error claim. See United States v. House, 684 F.3d 1173, 1210-11 (11th Cir. 2012) ("[W]here there is no error or only a single error, there can be no cumulative error[.]" (citation omitted)); Hanson v. Sherrod, 797 F.3d 810, 852 (10th Cir. 2015) ("We cumulate error only upon a showing of at least two actual errors." (citation omitted)); Ragan v. Horn, No. 2:00-cv-2092, 2016 WL 1241771, at *10 (E.D. Pa. Mar. 29, 2016) ("The cumulative error doctrine requires the existence of 'errors' to aggregate. Absent such errors . . . , the cumulative error doctrine does not apply." (citation and internal quotation marks omitted)). As the Court has found no error by Attorney Reed, and only a single error was assumed for the sake of argument, it follows that Defendant's cumulative error claim must be denied.

## III. CONCLUSION

Based upon the foregoing, the Court will deny Defendant's motion (Doc. No. 1274) to vacate, set aside, or correct judgment pursuant to 28 U.S.C. § 2255. The Court will also deny a

certificate of appealability, as Defendant has failed to make the requisite "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

An Order consistent with this Memorandum follows.

                                                s/ Yvette Kane
                                                Yvette Kane, District Judge
                                                United States District Court
                                                Middle District of Pennsylvania